# Wytheville.

## BEALE, MAYOR, & OTHERS v. PANKEY.

### June 20, 1907.

1. CONSTITUTIONAL LAW—*Amending Acts of Assembly—Title of Acts.*—Where the title of an act declares it to be an act to amend and re-enact a prior statute, but the enacting clause makes no reference whatever to the act which is referred to in the title, and does not purport to re-enact and publish it at length, such amendatory act is void because of its failure to comply with section 52 of the Constitution, declaring that no law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended with reference to its title.

2. MUNICIPAL CORPORATIONS—*Dissolution.*—A municipal corporation is not dissolved by the nonuser or misuser of its franchise, or the failure to elect officers. The Legislature alone can dissolve such a corporation.

3. MUNICIPAL CORPORATIONS—*Amending Charters—Constitutional Provision—General Statute.*—Section 117 of the Constitution is self-executing in so far as it amends the charters of cities and towns so as to conform to the provisions of the Constitution; and the general law for the government of cities and towns, passed in pursuance of the Constitution, which provides that for all towns there shall be elected every two years a mayor and six councilmen, who shall constitute the council of the town, operates to amend a charter granted to a town prior to the Constitution, which provided for only five councilmen, one of whom should be chosen as mayor; and the official acts of a mayor and council elected pursuant to such general law, are valid and binding when done in pursuance of their charter powers.

Appeal from the Circuit Court of Appomattox county. Decree for complainant. Defendant appeals.

*Reversed.*

The title of the amendatory Act of 1906 is "An Act to amend and re-enact an act entitled an Act incorporating Pamplin City, Virginia, approved March 24, 1874, as amended by an Act entitled an act to amend and re-enact the third section of an act entitled an act incorporating Pamplin City, Virginia, approved March 31, 1875."

The body of the Act of 1906 makes no reference whatever either to the original act or the amendatory act referred to in the title, but proceeds at once with the enacting clause, as follows:

"Be it enacted by the General Assembly of Virginia, that the territory * * * described in the second section of this act be deemed, taken and made a corporation by the name of Pamplin City, &c." The second section gives the boundaries of the town, and the remaining sections are devoted to a declaration of powers. The body of the act nowhere purports to amend and re-enact any previous statute.

*James H. Guthrie,* for the appellants.

*W. C. Franklin,* for the appellee.

Cardwell, J., delivered the opinion of the court.

The town of Pamplin City, Virginia, was incorporated by an act of the General Assembly, approved March 24, 1874 (Acts 1874, p. 138) the title of the act being "An act incorporating Pamplin City, Virginia." The first section of the act declared that the town of Pamplin, in the counties of Appomattox and Prince Edward, as the same had been theretofore laid off into lots, streets, etc., should be and was thereby made a town corporate, by the name of Pamplin City, and by that name to have and exercise the powers conferred upon towns by the general laws then in force, or which might thereafter be passed, for the government of towns containing less than 5,000 in-

habitants. The second section set out and defined the boundaries of the town. The third section provided that the officers of the town should consist of five trustees, who were to compose the council, etc., and certain persons named were to constitute the board of trustees, to hold their office one year, from the 1st of March, 1874, and until their successors were elected and duly qualified, according to law; and that, on the first Tuesday in February, 1875, there should be a regular election held for the election of officers of the corporation, and every two years thereafter. Said section further provided that the trustees should have power to pass all by-laws and ordinances for the government of the town that they might deem proper, not in conflict with the constitution of this state or of the United States, and also to provide for keeping streets in order, opening new streets, etc., and for other necessary improvements, for which purpose they might levy such tax, not exceeding 50 cents on the $100 worth of property as they might deem proper, etc. The fourth section provided that the trustees should elect from their body a president, who should be the mayor of the town, and be vested with all the powers of a justice of the peace within the limits of the town, etc. The fifth and last section provided for the appointment by the councilmen of a town sergeant, and prescribed the duties and powers of that officer, among which was that he should collect all town taxes.

The trustees named in the charter duly qualified by taking the oath of office, respectively, as required by law, entered upon the duties of councilmen of the town, and continued to act as such until an election of their successors was held thereafter as provided by law. The councilmen chosen at the first and at subsequent elections entered upon the duties of councilmen and acted in that capacity for a number of years.

By an act approved March 31, 1875 (Acts 1874-5, p. 419), the third section of the original act of incorporation was amended, but this amendment is of but little importance here, as it only changed the time for the election of the successors of

the trustees named in the original act, so that the election should take place on the fourth Thursday in May, 1875, and every two years thereafter.

By an act approved March 7, 1906, (Acts 1906, p. 90), the General Assembly again undertook to amend the charter of the town, the last mentioned act being entitled "An act to amend and re-enact an act entitled 'An Act incorporating the town of Pamplin City, Virginia,' approved March 24, 1874, as amended by an act entitled 'An Act to amend and re-enact the third section of an act incorporating Pamplin City,' approved March 31, 1875." Among other things, this last named act provided that, from and after the act went into effect, and until its councilmen and mayor, to be elected under its provisions, should have been so elected and qualified, R. L. Franklin, C. S. Morton, F. H. Lukin, L. N. Ligon, J. F. Connally and R. D. Baldwin were appointed councilmen, and R. W. Beale, mayor; how they might qualify; and that therefrom they should constitute the mayor and councilmen of said town of Pamplin City, Virginia, etc.

At an election held in the town of Pamplin City for mayor and six councilmen on the second Tuesday in June, 1906, in accordance with the general law then in force (sec. 1021, Code 1904), the said Beale was elected mayor, and the other six persons above named were elected councilmen of the town, and they respectively qualified as such on the 23rd day of June, 1906, and entered upon and continued to discharge the duties of their respective offices; the council electing one W. T. Johnson, sergeant of the town, who duly qualified as such by taking the oaths prescribed by law; one of his duties prescribed by the ordinance passed by the council being to "collect all taxes." The council, at a meeting held on the 25th day of June, 1906, levied a tax of 25 cents upon the $100 worth of all property liable for taxation in the town, for the lawful purposes of the town. Among the persons against whom a tax was levied, was one P. P. Pankey, for the sum of $1.97, an account for which

was made out and placed in the hands of Johnson, sergeant, for collection, along with the accounts of other perssons charged with taxes in the town. Johnson, the sergeant, proceeded to enforce the payment of the tax so levied; whereupon Pankey exhibited his bill against the mayor, councilmen and sergeant of the town, and obtained from the judge of the circuit court of Appomattox county an injunction restraining Johnson, the sergeant, from selling the property of the plaintiff, and the collection of the tax in the bill mentioned until the further order of the court.

The plaintiff attacked the validity of the tax against him, and the right to enforce its collection solely upon the ground that it was levied by virtue of the act of March 7, 1906, *supra,* and that said act is unconstitutional, null and void, in that it is an independent act, and not passed in conformity with the provisions of sec. 52, Art. 4, of the constitution of Virginia, which provides that no law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended with reference to its title, but the act revived or section amended shall be re-enacted and published at length.

To this bill, Beale, mayor, the six councilmen, and the sergeant of the town above mentioned, filed their joint answer, to which the plaintiff replied generally, which answer put in issue the constitutionality of the act of March 7, 1906, *supra,* and the validity of the tax levied against the plaintiff as above stated; and the cause coming on to be heard upon the bill and answer, affidavits filed in support of the averments of the answer, the record of the proceedings of the council, the certificates of the qualification by the mayor and members of the council, an agreed statement of facts, and a notice of a motion to dissolve the injunction theretofore awarded in the cause, the court, by its decree, entered in vacation, on the 21st day of March, 1907, held that the original charter of the town, approved March 24, 1874, as amended by an act of the General Assembly, approved March 31, 1875, had for a long time prior to the act of March

7, 1906, been disused, and at the time of the passage of said last mentioned act, and for many years prior thereto, there was no town government for said town of Pamplin City; that it appeared that the so-called town government under which the tax complained of in the bill was levied, was organized under the act approved March 7, 1906; that the town of Pamplin City had no legal existence or authority whatever, unless it be by virtue of the act approved March 7, 1906; and that the said last named act is void by reason of its being contrary to section 52, Art. 4, of the constitution of Virginia, inasmuch as the act purports to amend the act of March 24, 1874, as amended by the act of March 31, 1875, by reference to its title alone, and in the enacting clause makes no reference whatever to the act which is referred to in the title, and does not purport to re-enact and publish at length the act as sought to be amended; whereupon, the motion to dissolve the injunction theretofore awarded in the cause was overruled. From this decree the defendants in the court below appealed to this court.

This court is of opinion that, for the reasons stated in the decree appealed from, the learned judge below was plainly right in holding the act of March 7, 1906, void. But we are further of opinion that it was error to hold that the town of Pamplin City had no legal existence or authority whatever to levy the tax complained of in the bill of appellee in this cause.

We have seen that the validity of the original charter of the town is not called in question, and that the organization of the government of the town was duly had under that charter; that a mayor and councilmen of the town were from time to time thereafter duly elected and qualified, pursuant to the provisions of the charter as amended by the act approved March 31, 1875; and that these officers acted in their respective capacities for a number of years.

It seems to be well settled that a municipal corporation does not go out of existence for nonuser of its charter, or by a surrender of its franchise.

In 1 Dillon's Municipal Corporations, sec. 167, it is said: "Since all of our charters of incorporation come from the Legislature, a municipal corporation cannot dissolve itself by a *surrender* of its franchise. The state creates such corporations for *public* ends, and they will and must continue until the Legislature annuls or destroys them, or authorizes it to be done. If there could be such a thing as a surrender, it would, from necessity, have to be made to the Legislature, and its acceptance would have to be manifested by appropriate legislative action." In section 168 of the same work, it is said: "The doctrine of a *forfeiture of the right to be a corporation* has also, it is believed by the author, no just or proper application to our *municipal* corporations. If they neglect to use powers in which the public or individuals have an interest, and the exercise of such powers be not discretionary, the courts will interfere and compel them to do their duty. On the other hand, acts done beyond the powers granted are void. If private rights are threatened or invaded, the courts will, as hereafter shown, restrain or redress the injury. * * * In short, unless otherwise specially provided by the Legislature, the nature and constitution of our municipal corporations, as well as the purposes they are created to subserve, are such that they can, in the author's judgment, only be dissolved by the Legislature, or pursuant to the legislative enactment. They may become inert or dormant, or their functions may be suspended, for want of officers or of inhabitants; but *dissolved,* when created by an act of the Legislature, and once in existence, they cannot be, by reason of any default or abuse of the powers conferred, either on the part of the officers or inhabitants of the incorporated place. As they can exist only by legislative sanction, so they cannot be dissolved or cease to exist except by legislative consent or pursuant to legislative provision."

In 1 Beach on Pub. Corporations, sec. 118, the learned author declares, that "The power to dissolve a municipal corporation is vested wholly and exclusively in the legislative

branch of our government." And in sec. 119, he says: "The American municipal corporation is simply and purely a strictly public corporation. It is a corporation of citizens, for citizens and by citizens. Its sole object is local government. Being maintained, therefore, only for the public advantage, it is manifestly unjust and even impossible that the charters of our municipal corporations should be forfeited by judicial proceedings. To give such a power to the judiciary would be to make them co-ordinate with the Legislature in their control of local government and local legislation. The illegal acts of municipal officials can be avoided and enjoined by various methods of judicial procedure, but the charter itself being the creature of the Legislature, can be destroyed only by the same power that created. We have seen that the power of the Legislature over municipal charters is unlimited except by constitutional limitations and by the power of the ballot-box. We may further add that this power of control has no rival, and that neither the judicial nor the executive departments of our government can create nor destroy a municipality, which is a subdivision of the State government. There are, to the knowledge of the writer, no cases in which this exclusive control of the Legislature has been successfully questioned." In support of this statement of the law, a number of authorities are cited, among others 1 Dillon on Munic. Corp., sec. 168. *supra.*

In 20 Am. & Eng. Ency. of L. (2nd ed.) p. 1236, under the head of "Nonuser or Misuser of Franchises—Failure to Elect Officers, Etc.," it is said: "The general rule is undoubted that a municipal corporation is not *ipso facto* dissolved by a nonuser or misuser of its franchises or a failure to elect officers. It has been held, indeed, that nonuser or misuser of the franchises of a municipal corporation is not even ground for a decree of dissolution by the courts, but the contrary has also been declared." In support of the law as thus stated, a number of decided cases are cited.

It is true that the original charter of the town of Pamplin

City provides that the council shall consist of only five persons, and that the council should elect one of their number president, who should be mayor and be vested with all the powers of a justice of the peace within the limits of the town, but section 117 of the present constitution of Virginia provides, that "each of the cities and towns having at the time of the adoption of this constitution a municipal charter, may retain the same, excep⁺ ⌐o far as the same shall be repealed or amended by the General Assembly; provided that every such charter is hereby amended so as to conform to all the provisions, restrictions, limitations and powers as set forth in this article, or otherwise provided in this constitution;" and by section 1 of the schedule of the new constitution, it is provided that, "The common and statute laws in force at the time this constitution goes into effect, so far as not repugnant thereto or repealed thereby, shall remain in force until they expire by their own limitation or are altered or repealed by the General Assembly." The general law passed in pursuance of the new constitution for the government of cities and towns is found in Chap. 44 of the Code of 1904; and sec. 1021, a part of that chapter, provides, that in every town there shall be elected every two years, on the second Tuesday in June, a mayor and six councilmen; and that the mayor and councilmen shall constitute the council of the town.

It is clear, therefore, that by section 117 of the constitution, the act of March 24, 1874, incorporating the town of Pamplin City, as amended by the act of March 31, 1875, was amended so as to conform to the new constitution; and "Section 117 is self-executing so far as it * * * amends the charters of towns and cities, so as to make them conform to the provisions of the constitution." *Hicks* v. *Bristol,* 102 Va. 861; 47 S. E. 1001; *Campbell* v. *Bryant,* 104 Va. 509, 52 S. E. 638.

The mayor and council of the town of Pamplin City, appellants here, having been duly elected and qualified in conformity with the provisions of the general law for the government of cities and towns in the commonwealth, are the duly and legally

constituted government of the town until their successors be duly elected and qualified, and under the original charter of the town, as amended as before stated, the council is clothed with power to levy taxes within the limits prescribed in the charter; therefore, the tax here complained of, so far as this record discloses, is within the limits of the power of the council to levy, legal and valid, and its collection should not have been enjoined.

For the foregoing reasons, the decree appealed from must be reversed and annulled; and this court will enter such decree as the circuit court should have entered, dissolving the injunction awarded in the cause, with costs to appellants.

*Reversed.*